## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:18-cv-81038-Middlebrooks/Brannon

**SECURITIES AND EXCHANGE COMMISSION,**

 **Plaintiff,**

v.

**PALM HOUSE HOTEL, LLLP,** *et al.*,

 **Defendants and Relief Defendants.**

              /

### PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS PALM HOUSE HOTEL LLLP AND SOUTH ATLANTIC REGIONAL CENTER, LLC AND RELIEF DEFENDANT UNITED STATES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY LLC

Plaintiff Securities and Exchange Commission ("Commission"), pursuant to Fed. R. Civ. P. 55(b)(2), moves for entry of default judgments of permanent injunction and other relief against Defendants Palm House Hotel LLLP ("PHH"), South Atlantic Regional Center, LLC ("SARC"), and Relief Defendant United States Regional Economic Development Authority LLC, d/b/a EB5 Petition ("USREDA"), for failure to plead or otherwise defend, and states:[1]

### I.  INTRODUCTION

The Commission filed this action against Defendants PHH, SARC, Joseph Walsh, Sr., and Robert Matthews for violating the antifraud provisions of the federal securities laws in connection with a scheme to defraud 88 foreign investors participating in an Immigrant Investor Program (the "EB-5 Program") out of millions of dollars through lies and deceptive conduct.

---

[1] The Commission has entered into a consent agreement for final judgment with Relief Defendant 160 Royal Palm, LLC ("160 Royal"). However, 160 Royal is the debtor in a Chapter 11 bankruptcy proceeding in *In re: 160 Royal Palm, LLC*, Case No. 18-19441-EPK (S.D. Fla.). Consequently, 160 Royal must obtain the bankruptcy court's approval before its consent to final judgment can be filed in this case. On October 10, 2019, 160 Royal filed a Motion for Approval of Settlement with Securities and Exchange Commission (D.E. 1343). The parties in the bankruptcy case expect the motion to be scheduled for hearing within 21 days of that filing date.

The Commission seeks the entry of a default judgment under Fed.R.Civ.P. 55(b)(2) against Defendants PHH and SARC and Relief Defendant USREDA, who have each failed to file an answer or respond to the Complaint and have been defaulted by the Clerk.

## II.   PROCEDURAL HISTORY

On August 30, 2018, the Commission filed its Complaint for injunctive and other relief against the Defendants and Relief Defendants. (D.E. 1.)  The Complaint alleged, among other things, that PHH and SARC violated Section 17(a) of the Securities Act of 1933 ("Securities Act") 15 U.S.C. §77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240 10b-5.  The Commission requested permanent injunctive relief and a civil penalty against PHH and SARC, and disgorgement and prejudgment interest against PHH, SARC, and USREDA.

The Commission served PHH on August 6, 20918 (D.E. 4, 6), and SARC and USREDA the following day. (D.E. 8, 9).  PHH's answer was initially due on August 27, 2018, and SARC's and USREDA's answers were initially due on August 28, 2018, but the Court granted their motion for an extension of time to answer or respond no later than September 28, 2018. (D.E. 13.)  On motion of the Commission, the Clerk of Court entered a default against PHH, SARC, and USREDA on October 16, 2018. (D.E. 28.)

## III.   MEMORANDUM OF LAW

### A.   Legal Standard

The factual allegations of a complaint are deemed admitted by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 360 (11th Cir. 1987); *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When a defendant fails to defend an

action and a default has been entered, his liability for violations of the federal securities laws as alleged in the complaint, and the propriety of the relief sought, is deemed established. *Buchanan*, 820 F.2d at 360; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). Here, the factual allegations of the Complaint support the entry of default judgments against Defendants PHH and SARC for injunctive relief, and monetary relief as to PHH, SARC, and USREDA.

### B.   Overview of PHH and SARC's Participation in the EB-5 Offering Fraud

From November 2012 until March 2015, PHH raised at least $43,991,458 in investor funds from at least 88 foreign investors through an EB-5 offering of PHH limited partnership interests. (Compl., D.E. 1 ¶ 19.)  The EB-5 Program provides foreign nationals the opportunity to qualify for permanent residency in the United States through an investment of money in projects in the United States, which, among other things, create a certain number of jobs. (Id. ¶ 2.) A certain number of EB-5 visas are set aside for prospective immigrants who invest through a Regional Center, such as SARC (Id. ¶ 17.)  The offering materials provided to investors represented that PHH would loan investor funds to Palm House LLC ("Palm House") to acquire, develop, and operate the Palm House Hotel ("Hotel") located in Palm Beach, Florida. (Id. ¶ 3.)

During the relevant time, Walsh was the manager of SARC and USREDA and, through his control of those entities, controlled PHH. (Id. ¶ 6, 8.)  Matthews controlled Palm House and Relief Defendant 160 Royal Palm, LLC ("160 Royal"), the entity that owns the Hotel. (Id. ¶ 9.) However, instead of using investor funds as represented in the offering materials, Walsh— through PHH and SARC—and Matthews misappropriated a significant portion of the investor

3

funds. (Id. ¶¶ 3, 27-29.) Walsh, PHH, and SARC also made materially false and misleading statements to investors in connection with the EB-5 offering. (Id. ¶ 3.)  Consequently, investors not only suffered financial losses, but also were denied visas because they could not demonstrate that the Hotel project would create sufficient jobs. (Id. ¶ 32.)

Walsh, PHH, and SARC disseminated at least three versions of PHH's EB-5 false and misleading offering materials to investors. (Id. ¶ 20.) The offering materials included, among other documents, a private placement memorandum ("PPM"), to which a business plan, loan documents between PHH and Palm House ("loan documents"), a subscription agreement, a limited partnership agreement, and an escrow agreement were attached. (Id.) The offering materials were combined with a multi-hundred page investment portfolio containing additional documents, including various versions of a project brochure that was translated into Chinese and Farsi and a document titled "EB-5 Process" that explained the EB-5 process. (Id. ¶¶ 20-21.) PHH's offering materials appeared under some combination of one or more of the entities Walsh controlled, and the Hotel and SARC's logos. (Id. at ¶ 21.)  PHH, through Walsh and others, solicited investors through sales agents, and provided them with a copy of the investment portfolio and all of the offering materials. (Id. at 22.)

1. **Material Misrepresentations and Omissions Involving Walsh's Misappropriation of Funds through PHH and SARC**

Between November 2012 and at least December 2014, PHH's offering materials misrepresented that investor funds would be loaned to Palm House to acquire, develop, and operate the Hotel. (Id. ¶ 27.)  In reality, Walsh, through PHH and SARC, misappropriated approximately $13,578,000 of investor funds. (Id.)  First, Walsh misappropriated at least $8,078,000 of investor funds earmarked for the Hotel project, and then co-mingled those funds

with other funds he controlled for his own use and to pay expenses unrelated to the Hotel project. (Id.) Second, in December 2013, Walsh made an undisclosed loan to Matthews of at least $5.5 million of investor funds to save Matthews' personal Palm Beach mansion from foreclosure. (Id.) Walsh also knew that between February and December 2014 Matthews misappropriated millions of dollars of investor funds to purchase and pay for expenses associated with a 151-foot yacht, a piece of property located next to the Hotel, and to purchase his former home in Connecticut out of foreclosure. (Id. ¶¶ 3, 27-29, 41-42.)

### 2. Material Misrepresentations and Omissions Concerning Escrow Requirements and the Return of Investor Funds

Between November 2012 and at least June 2014, PHH's offering materials contained material misrepresentations concerning PHH's use of an escrow account for investor funds. (Id. ¶ 30.) PHH falsely claimed that investor funds would be held in an escrow account at PNC bank when, in reality, no escrow account ever existed for investor funds. (Id.) Indeed, Walsh was aware prior to the PHH offering that PNC Bank was not even administering the account receiving investor funds. (Id.)

PHH's offering materials also contained material misrepresentations concerning the return of funds paid by investors. (Id. ¶ 31.) The offering materials, including the PPM and SARC's website, falsely and fraudulently stated that investors' funds would be returned if their I-526 petitions (Immigrant Petition by Alien Entrepreneur) were denied by USCIS. (Id.) The brochures stated that SARC offered a 100% Full Refund of all fees and investment for unapproved I-526s, and SARC's website falsely and fraudulently referred to the promise of a return of the funds as a money back "guarantee." (Id.) PHH, SARC—who acted through Walsh—knew or recklessly disregarded that USREDA and SARC would not be able to repay

investors whose petitions were denied because they misappropriated for their own use millions of dollars of investor funds, and never escrowed investor funds prior to their release to Palm House. (Id. ¶ 32.)

### 3. Material Misrepresentations and Omissions Concerning Walsh and Matthews' Backgrounds

PHH's PPMs and business plan also contained material misrepresentations and omissions concerning Walsh's background in a section on "Management." (Id. ¶ 33.) Those offering materials falsely stated that Walsh had "extensive experience in merger and acquisition strategy and law" and experience with "the intricacies of U.S. Securities and Exchange laws," when he had neither. (Id.) Those offering materials also touted Matthews participation in the offering, describing him as the chairman of Matthews Ventures Holdings, LLC ("MVH"), a diversified holding company with interests in, among other things, real estate, hotels, and construction. (Id. ¶ 34.) However, PHH's PPMs and business plans materially omitted that in 2009, one of Matthews' companies, PB Realty Holdings LLC, was placed into involuntary bankruptcy with subcontractors obtaining approximately $2 million in judgments against Matthews, and that Matthews had lost to foreclosure both his own home, as well as the very Hotel in which investors were purportedly investing. (Id.) The offering materials also included a section on Matthews' brother, Gerry Matthews ("G. Matthews"), but did not disclose that he was a nominee for Matthews in the ownership of the Hotel because of Matthews' financial problems, a material omission. (Id. ¶ 35.)

### 4. Other Material Misrepresentations and Omissions

PHH's offering materials also materially misrepresented the conditions precedent to the advancement of loan disbursements to Palm House. (Id. ¶ 36.) In particular, the PPMs stated, "it

shall be a condition of each advance that as of such time there shall not have been a material adverse change in the operations, assets or financial condition of the (b)orrower and its subsidiaries, taken as a whole." (Id.) The loan documents made similar representations and stated that the determination as to material adverse changes would be made by PHH. PHH never ascertained whether Palm House met these pre-conditions for any loan advance. (Id. ¶¶36-37.) Matthews' misappropriation of approximately $7.9 million dollars of investor funds clearly represented material and adverse changes in the operations, assets, and financial condition of Palm House, 160 Royal, and the Hotel, all of which he controlled. (Id. ¶¶ 36-37.) PHH had the authority pursuant to the loan documents to access Palm House's financial statements and inspect its books and records, but never bother to do so. (Id. ¶ 37.)

The offering materials also made materially false and misleading statements concerning: (i) the preparation and periodic disclosure to investors of PHH financial reports and statements (Id. ¶ 38); (ii) Palm House making monthly interest payments to PHH on its loan for five years (Id. ¶ 39); and (iii) Palm House's purported ownership of, and substantial investment in, the Hotel prior to the commencement of the PPH offering (Id. ¶ 40).

### 5. Relief Defendant USREDA

During the relevant time, USREDA handled business activities and USCIS petition work for PHH and SARC's EB-5 securities offering. (Id. ¶ 11.) It also received investor funds. (Id. ¶ 11; Declaration of  Walsh—the architect of the fraud alleged in the Complaint—was USREDA's manager. (Id. ¶¶ 8, 11.)  As a consequence of the fraud perpetrated by PHH and SARC through Walsh, investors were denied visas because the Hotel project did not create the required number of jobs. (Id. ¶ 32.)

**C.** **PHH and SARC's Violation of Section 17(a) of the Securities Act and Section 10 and Rule 10b-5 of the Exchange Act**

Through Walsh, PHH and SARC violated Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. These provisions prohibit essentially the same type of conduct. *United States v. Naftalin*, 441 U.S. 768, 773 (1979); *SEC v. Unique Financial Concepts, Inc.*, 119 F. Supp. 2d 1332, 1339 (S.D. Fla. 1998), aff'd, 196 F.3d 1195 (11th Cir. 1999). To establish a violation of these statutes, the Commission must show: (i) a misrepresentation or omission; (ii) that is material; (iii) made with scienter; (iv) in the offer of or in connection with the purchase or sale of a security. *SEC v. Chemical Trust*, No. 00-8015-CIV-Ryskamp, 2000 WL 33231600, at *9 (S.D. Fla. Dec. 19, 2000). As a fifth element, the Commission also must establish the use of interstate commerce, the mail, or a national securities exchange. *SEC v. Corporate Relations Group*, No. 99-cv-1222, 2003 WL 25570113, at *7 (M.D. Fla. Mar. 28, 2003).

The Complaint alleges facts demonstrating that PHH and SARC made numerous misrepresentations and omissions in PHH's offering materials.  First and foremost, the offering materials prepared and disseminated by and on behalf of PHH and SARC failed to disclose to investors that PHH and SARC—through Walsh—and Matthews misappropriated approximately $20 million dollars that investor were told would be loaned to Palm House to acquire, develop, and operate the Hotel. (Compl., D.E. 1 ¶¶ 27-29.) Walsh, PHH, and SARC also made false and materially misleading statements regarding: (i) the use of an escrow account to hold investor funds prior to disbursement to Palm House (Id. ¶ 30); (ii) the guaranteed return of investors' funds if their I-526 petitions were denied (Id. ¶¶ 31-32); (iii); Walsh and Matthews' backgrounds (Id. ¶¶ 33-35); (iv) the existence of conditions precedent to the advancement of loan

disbursements to Palm House (Id. ¶ 36-37); (v) the preparation and periodic disclosure to investors of PHH financial reports (Id. ¶ 38); (vi) Palm House's repayment of the loan in monthly installments (Id. ¶ 39); and (vii) Palm House's purported ownership of and investment in the Hotel prior to the commencement of the PHH offering (Id. ¶ 40).[2]

These misrepresentations and omissions were material. A statement or omission is considered material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic v. Levinson, 485 U.S. 224, 231 (1988). Walsh, PHH, and SARC's misrepresentations and omissions were material to reasonable investors because they related directly to the safety and risk involved in the investment, use and misuse of investor funds, the nature of the company's business operations, and the failure to disclose negative aspects of Walsh and Matthews' backgrounds.

PHH and SARC acted with scienter, as is required when proving a violation of Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. Scienter is a mental state embracing intent to deceive, manipulate, or defraud. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). The Eleventh Circuit has concluded that scienter may be established by a showing of knowing misconduct or severe recklessness. SEC v. Carriba Air, Inc., 681 F.2d 1318, 1324 (11th Cir. 1982). A finding of scienter is not required to establish a violation of Section 17(a)(2) or (3) of the Securities Act – only negligence is required. Aaron v. SEC, 446 U.S. 680, 696-97 (1980).

---

[2] For purposes of Section 10(b) of the Exchange Act and Rule 10b-5, PHH, and SARC are "makers" of statements contained in PHH's offering materials because, through Walsh, they had ultimate authority over the statements contained in those documents, some of which Walsh signed or reviewed and approved. Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 142-43 (2011).

As the principal of SARC during the relevant period, Walsh's mental state is imputed to SARC, and PHH, as SARC was its general partner. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972) (an individual's "knowledge is imputed to the corporations which he controlled").  PHH and SARC acted through Walsh, and, as such, acted with a high degree of scienter.  Walsh knew or was severely reckless in not knowing the offering materials were misleading because of his knowledge that (i) PHH investors' funds were being misappropriated (Compl., D.E. 1 ¶¶ 27-29); (ii) investors' funds were not held in escrow at PNC Bank (id. ¶ 30); (iii) PHH would not return investors' funds if their I-526 petitions were denied (id. ¶¶ 31-32); (iv) Walsh misrepresented his background and experience (id. ¶¶ 33-35); (v) PHH did nothing to ensure that that there had been no material adverse change in Palm House prior to each advance of investor funds although it was obligated to do so (id. ¶¶ 36-37); (vi) PHH did not provide financial reports to investors (id. ¶ 38); (vii) Palm House did not make monthly interest payments and Walsh improperly retained prepaid interest from investor funds (id. ¶ 39); and (viii) Matthews had adverse financial judgments, installed G. Matthews as his nominee owner of the Hotel as a result, and did not have the represented equity invested in the Hotel (Id. ¶¶ 18, 35). PHH, SARC, and Walsh received money in connection with these material misrepresentations and omissions in the form of the investments and misappropriated funds. (Id. ¶¶ 41-42.)

Finally, the facts in the Complaint demonstrate the last two required elements of a violation of Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. First, PHH and SARC's actions were in connection with the purchase and sale of securities. PHH sold limited partnership interests in PHH through the dissemination of the offering materials to investors. (Compl., D.E. 1 ¶¶ 19-26). Second, PHH made use of the means

of interstate commerce and communication in interstate commerce in executing his fraud. For example, Walsh, acting as an agent of PHH, emailed sales agents that included links to PHH's offering materials and investment portfolio and disseminated material misrepresentations on SARC's website, which reached investors nationally and internationally. (Id. ¶¶ 22, 31.)  For all the foregoing reasons, the Commission has established a prima facie case that PHH and SARC violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### D.  Permanent Injunctive Relief is Warranted Against PHH and SARC

The Commission is entitled to injunctive relief when it establishes (i) a violation of the federal securities laws, and (ii) a reasonable likelihood of future violations. *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). The Commission has already established the first prong by showing PHH and SARC violated the federal securities laws.

In determining whether PHH and SARC are reasonably likely to continue to violate the securities laws, this Court should consider the following factors: (i) the egregiousness of the conduct; (ii) the isolated or recurrent nature of the violations; (iii) the degree of scienter involved; (iv) the sincerity of their assurances against future violations; (v) any recognition of the wrongful nature of the conduct; and (vi) the likelihood that PHH and SARC's business operations will present opportunities for future violations. *Carriba Air*, 681 F.2d at 1332. In this case, the factors set forth above weigh in favor of the Court entering a permanent injunction.

In this case, the factors set forth above weigh in favor of the Court entering a permanent injunction. First, as described above, the conduct was egregious.   PHH and SARC raised millions of dollars from investors through a series of patently and materially false statements and

omissions.  Second, the offering fraud was not isolated, but instead spanned more than two years. Third, while the Commission need not demonstrate scienter in order to establish all the underlying securities fraud violations, the fraud involved a high degree of scienter. As discussed in detail above, PHH and SARC made materially misleading statements and omissions to investors concerning the use of investor funds, the nature of the investment and PHH's business operations – in addition to misappropriating millions of dollars.  Finally, as to the fourth and fifth factors, given PHH and SARC's failure to appear in this action (and Walsh's refusal to do so), the Court cannot have any assurances that PHH and SARC will not continue to engage in this misconduct. Accordingly, the Court should enter a permanent injunction against PHH and SARC.

### E.  Disgorgement, Prejudgment Interest, and Civil Penalty

Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). Where, as here, the fraud is "pervasive," the Court should order all profits stemming from the scheme to be disgorged. *CFTC v. British American Commodity Options Corp.*, 788 F.2d 92, 93-94 (2d Cir. 1986). Courts are empowered to order wrongdoers to disgorge the amount of their profits from the wrongdoing. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). "The District Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d. Cir. 1996), cert. denied. The Commission is entitled to disgorgement "upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). The Commission's burden for showing "the amounts of assets subject to disgorgement . . . is light . . . Exactitude is not a requirement." *ETS Payphones*, 408 F.3d at 735.

Defendants PHH and SARC and Relief Defendant USREDA have no legitimate claim to the proceeds of a scheme to defraud investors orchestrated by Defendant Walsh—who exercised control over them during the fraudulent scheme. The allegations of the complaint make clear that Walsh used PHH and SARC to further the fraud, and all three as conduits to receive and disburse investor funds for his and their benefit, to the detriment of investors.  Records obtained by the Commission show that Defendants PHH, SARC, and Relief Defendant USREDA received $560,000.00, $1,130,015.00, and $48,304,847.00 in investor deposits, respectively, stemming from violations of the federal securities laws, during the period of the fraudulent scheme. (Exhibit A, Declaration of Timothy Galdencio, ¶ 6.)

In addition to disgorgement, it is also appropriate for the Court to order PHH, SARC, and USREDA to pay prejudgment interest. Requiring a defendant to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement. *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1090 (D.N.J. 1996). A defendant's wrongdoing justifies awards of prejudgment interest in accord with the doctrines of fundamental fairness. *SEC v. Tome*, 638 F. Supp. 638, 639 (S.D.N.Y. 1986).

Here, the Commission calculated the prejudgment interest in accordance with the delinquent tax rate established by the Internal Revenue Service, 26 U.S.C. § 6621(a)(2), and assessed on a quarterly basis, from the date of each entity's last receipt of investor funds, through the date of this filing. Based on the IRS's delinquent tax rate, the prejudgment interest amounts for PHH, SARC, and USREDA are $119,759.97, $10,330,333.75, and $241,661.73, respectively. (Exhibit B, C, and D, Prejudgment Interest Calculations for PHH, SARC, and USREDA). The Court should include these amounts in the default judgments.

13

Lastly, the Court should order PHH and SARC to pay a civil penalty. Under Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. §78u(d), the Court may impose a civil penalty against each of them. The purposes of civil penalties are to punish the individual violator as well as deter future violations. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). The Commission requests that the Court allow it to file the appropriate motion setting the amounts of any civil penalty within 120 days after the Court's entry of default judgment against PHH and SARC.  During that time, Commission staff will seek authority from the five-member body of the Commission to pursue specific civil penalty amounts from PHH and SARC.

**IV.**   **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court grant its Motion for Entry of a Default Judgment against Defendants PHH and SARC permanently enjoining them from future violations of the federal securities laws and for other and further relief as noted above, and enter a Final Judgment against Relief Defendant USREDA for disgorgement and prejudgment interest as noted above. For the Court's convenience, proposed default judgments are provided.

Dated: October 10, 2019                                      Respectfully submitted,

                                                         By:  Alejandro Soto
                                                              Senior Trial Counsel
                                                              Fla. Bar No. 172847
                                                              Telephone: (305) 982-6313
                                                              Email: sotoal@sec.gov
                                                              Attorney for Plaintiff
                                                              Securities and Exchange Commission
                                                              801 Brickell Avenue, Suite 1800
                                                              Miami, FL 33131
                                                              Telephone: (305) 982-6300
                                                              Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of same was served on the parties indicated on the service list below via methods indicated therein.

s/*Alejandro O. Soto*
Alejandro O. Soto

## SERVICE LIST

Via E-mail: joedirect@gmail.com
Joseph J. Walsh, Sr.

Via U.S. Mail and Email
Joseph J. Walsh, Sr., *Pro se*
c/o Henry Bennett Handler, Esq.
Weiss, Handler & Cornwell, P.A.
2255 Glades Road, Suite 218A
Boca Raton, FL 33431-7391
hbh@whcfla.com

Via CM-ECF
Christopher W. Kammerer
Email: ckammerer@kammerermariani.com
John F. Mariani
Email: jmariani@kammerermariani.com
KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401 Telephone: (561) 990-1592
*Counsel for Robert Matthews*