**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:18-cv-81038-MIDDLEBROOKS**

**SECURITIES AND EXCHANGE COMMISSION,**

      **Plaintiff,**

**v.**

**PALM HOUSE HOTEL, LLLP,** *et al.*,

      **Defendants and Relief Defendants.**

_____/

**PLAINTIFF'S SUPPLEMENTAL MOTION FOR ENTRY OF DEFAULT JUDGMENT**
**AGAINST DEFENDANTS JOSEPH J. WALSH, SR., PALM HOUSE HOTEL LLLP,**
**AND SOUTH ATLANTIC REGIONAL CENTER, LLC, AND RELIEF DEFENDANT**
**UNITED STATES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY LLC**

Plaintiff Securities and Exchange Commission (the "Commission"), pursuant to Fed. R. Civ. P. 55(b)(2) and this Court's Orders [D.E. 68, 69], respectfully submits this supplemental motion for entry of default judgments of permanent injunction and other relief against Defendants Joseph J. Walsh, Sr. ("Walsh"), Palm House Hotel LLLP ("PHH"), and South Atlantic Regional Center, LLC ("SARC"), and Relief Defendant United States Regional Economic Development Authority LLC, d/b/a/ EB5 Petition ("USREDA"), for failure to plead or otherwise defend, and states:

**I.     INTRODUCTION**

The Commission filed this action against Defendants Walsh, PHH, SARC, and Robert Matthews ("Matthews")[1] for violating the antifraud provisions of the federal securities laws in connection with a scheme to defraud at least 88 foreign investors participating in an Immigrant

---

[1] On September 16, 2019, the Court entered Judgment of Permanent Injunction and Other Relief as to Defendant Matthews [D.E. 56].  On November 20, 2019, the Court entered Final Judgment as to Relief Defendant 160 Royal Palm, LLC ("160 Royal") [D.E. 67], an entity that Matthews controlled which received investor funds in connection with Defendants' fraudulent scheme.

Investor Program (the "EB-5 Program"), administered by the United States Citizenship and Immigration Services ("USCIS"), out of millions of dollars through numerous material misrepresentations and omissions of material fact and related deceptive conduct.  As further detailed in the Commission's Complaint [D.E. 1], the Commission alleges, among other things, that Walsh, PHH, and SARC violated:  (i) Section 17(a)(1) of the Securities Act of 1933 ("Securities Act") (Count I); (ii) Section 17(a)(2) of the Securities Act (Count II); (iii) Section 17(a)(3) of the Securities Act (Count III); (iv) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(a) thereunder (Count IV); (v) Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder (Count V); and (vi) Section 10(b) of the Exchange Act and Rule 10b-5(c) thereunder (Count VI).  [*Id.*]

On April 16, 2019, after Walsh's "consistent attempts to evade his obligation of defending this lawsuit" [D.E. 68 at 3], the Commission filed its Motion to Strike Defendant Walsh's Answer and Enter Default Judgement Against Him Pursuant to Fed. R. Civ. P. 37.  [D.E. 50.]  On October 11, 2019, the Commission filed its Motion for Entry of Default Judgment Against Defendants PHH and SARC, and Relief Defendant USREDA [D.E. 59] – entities that Walsh controlled – after the Clerk of Court entered a default against them on October 16, 2018.  [D.E. 28.]

On November 21 and 22, 2019, the Court ordered the Commission to supplement the two default judgment motions and separately state each count against Defendants Walsh, PHH, and SARC and the facts supporting the default request for each count.  [D.E. 68, 69.]  As detailed below, the Commission is seeking default judgments against Defendants Walsh, PHH, and SARC for all of the claims asserted against them (Counts I-VI) and a judgment against Relief Defendant USREDA finding it liable for disgorgement of ill-gotten gains.  The Commission is relying on the same facts to establish each of these violations.  On the issue of remedies, the Commission seeks

at this time entry of permanent injunctive relief against Walsh, PHH, and SARC.  The Commission requests that the Court grant it 90 days from the entry of the judgment to move for the appropriate monetary relief – disgorgement and prejudgment interest against the Defendants and Relief Defendant and civil money penalties against the Defendants.[2]

## II.      MEMORANDUM OF LAW

### A.      Legal Standards

#### 1.      Default Judgment

The factual allegations of a complaint are deemed admitted by the entry of a default judgment.  *Buchanan v. Bowman*, 820 F.2d 359, 360 (11th Cir. 1987); *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  When a defendant fails to defend an action and a default judgment has been entered, his liability for violations of the federal securities laws as alleged in the complaint, and the propriety of the relief sought, is deemed established.  *Buchanan*, 820 F.2d at 360; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).

#### 2.      Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, while Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit fraud in connection with the purchase or sale of securities.  Specifically, Section 17(a) prohibits:  (1) employing any device, scheme, or artifice to defraud; (2) obtaining money or property by means of any untrue statement or omission of material fact; or (3) engaging in any transaction, practice, or course of business

---

[2]  The Commission is submitting herewith four revised proposed default judgments for Defendants Walsh, PHH and SARC, and Relief Defendant USREDA.  The Commission respectfully requests that these revised default judgments be considered in lieu of the originally submitted proposed default judgments.  [*See* D.E. 50-7, 59-5, 59-6, 59-7.]

which operates or would operate as a fraud or deceit on any purchaser. *See* 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit: (a) employing any device, scheme, or artifice to defraud; (b) making any untrue statement or omission of material fact; or (c) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person. *See* 15 U.S.C. § 78j(b).

Claims under Section 17(a) of the Securities Act "require[ ] substantially similar proof" as claims under Section 10(b) and Rule 10b-5 of the Exchange Act. *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014). As this Court recognized, "[t]o prove a 10(b) violation, the SEC must show (1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." [D.E. 68 at 6 (citing *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007)).] "To show a violation of section 17(a)(1), the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter. [*Id.*] "[T]o show that the defendants violated section 17(a)(2) or 17(a)(3), the SEC need only show (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence." [*Id.*] Section 17(a)(2) has the additional element that the defendant have obtained money or property as a result of the misrepresentation. *See* 15 U.S.C. § 77q(a)(2).

The Supreme Court has recently held that "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b-5 . . . and § 17(a)(1)," and that even a disseminator who did not "make" the misstatements as defined by *Janus* can thus be held as a primary violator. *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019); *see also Janus Capital Group v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (holding that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority

4

over the statement, including its content and whether and how to communicate it."). The Supreme

Court further explained:

> It would seem obvious that the words in these provisions are, as ordinarily used, sufficiently broad to include within their scope the dissemination of false or misleading information with the intent to defraud. By sending emails he understood to contain material untruths, Lorenzo "employ[ed]" a "device," "scheme," and "artifice to defraud" within the meaning of subsection (a) of the Rule, § 10(b), and § 17(a)(1). By the same conduct, he "engage[d] in a[n] act, practice, or course of business" that "operate[d] ... as a fraud or deceit" under subsection (c) of the Rule.

*Lorenzo*, 139 S. Ct. at 1101. A review of the dictionary definitions of "device," "scheme,"

"artifice," "act," and "practice" further confirmed the Supreme Court's view that these terms are

"expansive" and unequivocally encompassed the conduct at issue. *Id*.

Finally, although *Lorenzo* did not explicitly discuss Section 17(a)(3) of the Securities Act,

because Section 17(a)(3) "is virtually identical to Rule 10b-5(c), which *Lorenzo* did address . . .

*Lorenzo* thus controls on 17(a)(3) as well as the other provisions." *Malouf v. SEC*, 933 F.3d 1248,

1260 (10th Cir. 2019).

**B.    Overview Of Walsh, PHH, And SARC's Participation In The EB-5 Offering Fraud**

From November 2012 until March 2015, PHH raised at least $43,991,458 in investor funds

from at least 88 foreign investors through an EB-5 offering of PHH limited partnership interests.

[Compl., D.E. 1 ¶ 19.] The EB-5 Program provides foreign nationals the opportunity to qualify

for permanent residency in the United States through an investment of money in projects in the

United States, which, among other things, create a certain number of jobs. [*Id.* ¶ 2.] A certain

number of EB-5 visas are set aside for prospective immigrants who invest through a Regional

Center, such as SARC. [*Id.* ¶ 17.] The offering materials provided to investors represented that

PHH would loan investor funds to Palm House LLC ("Palm House") to acquire, develop, and

operate the Palm House Hotel ("Hotel"). [*Id.* ¶ 3.]

During the relevant time, Walsh was the manager of SARC and USREDA and, through his control of those entities, controlled PHH.  [*Id.* ¶¶6, 8.]  Matthews controlled Palm House and Relief Defendant 160 Royal, the entity that owns the Hotel.  [*Id.* ¶ 9.]  However, instead of using investor funds as represented in the offering materials, Walsh – through PHH and SARC – and Matthews misappropriated a significant portion of the investor funds.  [*Id.* ¶¶ 3, 27-29.]  Walsh, PHH, and SARC also made materially false and misleading statements to investors in connection with the EB-5 offering.  [*Id.* ¶ 3.]  Consequently, investors not only suffered financial losses, but also were denied visas because they could not demonstrate that the Hotel project would create sufficient jobs. [*Id.* ¶ 32.]

Walsh, PHH, and SARC disseminated at least three versions of PHH's EB-5 false and misleading offering materials to investors (collectively, the "offering materials").  [*Id.* ¶ 20.]  The offering materials included, among other documents, a private placement memorandum ("PPM"), to which a business plan, loan documents between PHH and Palm House ("loan documents"), a subscription agreement, a limited partnership agreement, and an escrow agreement were attached. [*Id.*]  The offering materials were combined with a multi-hundred page investment portfolio containing additional documents, including various versions of a project brochure that was translated into Chinese and Farsi and a document titled "EB-5 Process" that explained the EB-5 process.  [*Id.* ¶¶ 20-21.]  PHH offering materials appeared under some combination of one or more of the entities Walsh controlled, and the Hotel and SARC's logos.  [*Id.* ¶ 21.]  PHH, through Walsh and others, solicited investors through sales agents, who were provided with a copy of the investment portfolio and all of the offering materials.  [*Id.* ¶ 22.]

C.   **Factual Allegations Supporting Entry of Default Judgment For Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act (Count IV)**

Count IV of the Complaint asserts violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) thereunder, 17 C.F.R. § 240.10b-5(a), against Walsh, PHH, and SARC. [*Id.* at 14.]  As noted above, to establish a Rule 10b-5(a) violation, the Commission is required to show material misrepresentations or omissions in connection with the purchase or sale of securities made with scienter.  The following facts, as alleged in the Complaint, support the Commission's default request for Count IV:

### 1.   Material Misrepresentations and Omission of Fact

To violate Section 10(b) of the Exchange Act and Rules 10b-5(a)-(c) thereunder (as well as Section 17(a)(1)-(3)), the alleged misrepresentations and omissions of fact must be material.  A statement or omission is considered material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic v. Levinson*, 485 U.S. 224, 231 (1988).  For example, courts have considered misrepresentations about the risk and safety of an investment material as a matter of law.  *See CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1329-30 (11th Cir. 2002) (citing with approval *CFTC v. Noble Wealth Data Information Services, Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000) (holding that representations about profit potential and risk "go to the heart of a customer's investment decision and are therefore material as a matter of law")); *SEC v. Phoenix Telecom*, 239 F. Supp. 2d 1292, 1298-99 (N.D. Ga. 2000) (holding misrepresentations about the safety of an investment are material).  In addition, representations regarding the nature of a company's business operations are material.  *See generally SEC v. North American Research & Development Corp.*, 375 F. Supp. 465, 470-71 (S.D.N.Y. 1974).  Further, omissions regarding the use of investor funds are material.  *See SEC v. Coplan*, No. 13-62127-CIV, 2014 WL 695393, at *4 (S.D. Fla., Feb. 24, 2014); *SEC v. The Better Life Club of America,*

*Inc.*, 995 F. Supp. 167, 177 (D.D.C. 1998) ("[N]o rational investor would knowingly invest in a project which never funded profitable ventures and which diverted substantial funds to the personal use of its promoters.").

As detailed below, the Commission has adequately alleged in the Complaint that Defendants Walsh, PHH, and SARC made numerous material misrepresentations and omissions of fact.

### a.     Walsh's Misappropriation of Funds Through PPH and SARC

Between November 2012 and at least December 2014, the offering materials misrepresented that investor funds would be loaned to Palm House to acquire, develop, and operate the Hotel. [*Id.* ¶ 27.] Those statements were materially false because Walsh, through PHH and SARC, misappropriated approximately $13,578,000 of investor funds. [*Id.*] First, Walsh misappropriated at least $8,078,000 of investor funds earmarked for the Hotel project while co-mingling those funds with other funds he controlled for his own use and to pay expenses unrelated to the Hotel project. [*Id.*] Second, in December 2013, Walsh made an undisclosed loan to Matthews of at least $5.5 million of investor funds to save Matthews' personal Palm Beach mansion from foreclosure. [*Id.*] The loan, which was undocumented, was never disclosed to investors. [*Id.*]

### b.     Escrow Requirements and the Return of Investor Funds

Between November 2012 and at least June 2014, PHH's offering materials contained material misrepresentations concerning PHH's use of an escrow account for investor funds. [*Id.* ¶ 30.] PHH falsely claimed that investor funds would be held in an escrow account at PNC Bank when, in reality, no escrow account ever existed for investor funds. [*Id.*]

PHH's offering materials also contained material misrepresentations concerning the return of funds paid by investors. [*Id.* ¶ 31.] The offering materials, including the PPM and SARC's website, falsely and fraudulently stated that investors' funds would be returned if their I-526 petitions (Immigrant Petition by Alien Entrepreneur) were denied by USCIS. [*Id.*] For example, the brochures stated that "[USREDA] and South Atlantic Regional Center offer[] a 100% Full Refund of all fees and investment if your I-526 is not approved." [*Id.*] Some of these documents and SARC's website falsely and fraudulently referred to the promise to return funds as a money back "guarantee." [*Id.*] No investor funds were ever returned to investors due to Defendants misappropriating millions of dollars of such funds. [*Id.* ¶ 32.]

### c.    Walsh and Matthews' Background

PHH's PPMs and business plan contained material misrepresentations and omissions concerning Walsh's background in a section on "Management." [*Id.* ¶ 33.] Walsh drafted the description of his background which stated that he "has extensive experience in merger and acquisition strategy and law" and experience with "the intricacies of U.S. Securities and Exchange laws," when he had neither. [*Id.*] Those offering materials also touted Matthews' participation in the offering, describing him as the chairman of Matthews Ventures Holdings, LLC ("MVH"), a diversified holding company with interests in, among other things, real estate, hotels, and construction. [*Id.* ¶ 34.] However, PHH's PPMs and business plans materially omitted that in 2009, one of Matthews' companies, PB Realty Holdings LLC, was placed into involuntary bankruptcy, with subcontractors obtaining approximately $2 million in judgments against Matthews, and that Matthews had lost his own home, as well as the very Hotel in which investors were purportedly investing, in foreclosure. [*Id.*] The offering materials also included a section on Matthews' brother, Gerry Matthews ("G.Matthews"), but did not disclose that he was a mere

nominee for Matthews in the ownership of the Hotel because of Matthews' financial problems, a material omission. [*Id.* ¶ 35.]

### d.    Other Material Misrepresentations and Omissions of Fact

The offering materials materially misrepresented the conditions precedent to the advancement of loan disbursements to Palm House.  [*Id.* ¶ 36.]  In particular, the PPMs stated "it shall be a condition of each advance that as of such time there shall not have been a material adverse change in the operations, assets or financial condition of the [b]orrower and its subsidiaries, taken as a whole."  [*Id.*]  The loan documents made similar representations and stated that the determination as to material adverse changes would be made by PHH.  PHH never ascertained whether Palm House met these pre-conditions for any loan advance.  [*Id.* ¶¶ 36-37.]  Matthews' misappropriation of approximately $7.9 million dollars of investor funds clearly represented material and adverse changes in the operations, assets, and financial condition of Palm House, 160 Royal, and the Hotel, all of which he controlled.  [*Id.*]

The offering materials also made materially false and misleading statements concerning: (i) the preparation and periodic disclosure to investors of PHH financial reports and statements [*id.* ¶ 38]; (ii) Palm House making monthly interest payments to PHH on its loan for five years [*id.* ¶ 39]; and (iii) Palm House's purported ownership of, and substantial investment in, the Hotel prior to the commencement of the PPH offering [*id.* ¶ 40].

### 2.    In Connection With Requirement

"The 'in connection with the purchase or sale of' and 'in the offer or sale of' elements of Rule 10b-5 and § 17(a) can be interchangeable."  *SEC v. Radius Capital Corp.*, 653 F. App'x 744, 749 (11th Cir. 2016).  The Supreme Court and the Eleventh Circuit have consistently embraced an expansive reading of these provisions in Commission civil enforcement actions.  *See, e.g.*, *SEC v.*

*Zandford*, 535 U.S. 813, 819 (2002); *Radius Capital*, 653 F. App'x at 750 ("[W]e have continued to read the terms 'in connection with the purchase or sale of' and 'in the offer or sale of' broadly."). Fraudulent conduct satisfies the "in connection with" requirement whenever it "touches" a securities transaction. *Zandford*, 535 U.S. at 819-20. Thus, "if the material misrepresentation or omission occurred in the context of public dissemination in a document such as a[n] . . . investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission." *SEC v. Huff*, 758 F. Supp. 2d 1288, 1353 (S.D. Fla. 2010) (citations omitted).[3]

Here, the Commission has alleged sufficient facts showing that the offering materials containing the above-referenced material misrepresentations and omissions of fact were disseminated to investors through an EB-5 offering of PHH limited partnership interests. [D.E. 1 ¶¶ 3, 6, 19-22, 27-40.] Walsh, PHH, and SARC were able to raise over $43 million from at least 88 foreign investors based upon the materially false and misleading offering materials. [*Id.* ¶¶ 3, 19.] Walsh also made use of the means of interstate commerce and communications in executing his fraud. Walsh, acting as an agent of PHH, emailed sales agents links to PHH's offering materials and investment portfolio and disseminated material misrepresentations on SARC's website, which reached investors nationally and internationally. [*Id.* ¶¶ 22, 31.] There is little doubt that the Commission has satisfied both Rule 10b-5's "in connection with" requirement and Section 17(a)'s "in the offer or sale of" requirement. *See Radius Capital Corp.*, 653 F. App'x at 749 (finding both requirements to be "interchangeable").

---

[3] "Unlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money." *SEC v. Pirate Investor, LLC*, 580 F.3d 233, 239 n.1 (4th Cir. 2009) (quotation omitted).

### 3.      Scienter

Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a)(1) of the Securities Act, require a showing of scienter.  Scienter is a "mental state embracing the intent to deceive, manipulate or defraud." *Ernst & Ernst. v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).  The scienter requirement can also be satisfied by recklessness, which includes knowing misconduct or extreme departure from the standards of ordinary care.  *See SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982).

As detailed in the Complaint, Walsh substantially participated in the creation and dissemination of the materially false and misleading offering materials concerning the EB-5 offering of limited partnership interests in PHH.  [*Id.* ¶ 23.]  Not only did Walsh provide information to USREDA's in-house counsel so that counsel could draft the false offering materials, Walsh also:  (i) reviewed and approved all of the offering materials; (ii) signed certain offering materials as president and/or manager of SARC and USREDA; and (iii) edited, reviewed, and approved various versions of a project brochure and a document titled "EB-5 Petition" explaining the EB-5 process.  [*Id.*]

Given Walsh's control over, and ultimate approval of, the offering materials, Walsh, and the entities he controlled – PHH and SARC – made material misrepresentations and omissions of fact in PHH's offering materials with scienter.  Walsh, PHH, and SARC knew, or were reckless in not knowing, that the offering materials were materially misleading because:

(i)      PHH investors' funds were being misappropriated by Walsh and Matthews through entities they controlled which were used to pay for personal expenses and real property outside of the Hotel project [*Id.* ¶¶ 3, 27-29, 41-42];

(ii)     investors' funds were not held in escrow at PNC Bank and, in fact, Walsh was aware prior to the PHH offering that PNC Bank was not even administering the account receiving investor funds [*Id.* ¶ 30];

(iii)    USREDA and SARC would not be able to repay investors I-526 petitions when denied by USCIS [*Id.* ¶ 32];

(iv)    Walsh and Matthews misrepresented their background and experience [*Id.* ¶¶ 33-34];

(v)    Matthews had adverse financial judgments, installed G.Matthews as his nominee owner of the Hotel as a result of his financial problems, and did not have the represented equity invested in the Hotel [*Id.* ¶¶ 34-35];

(vi)    PHH did nothing to ensure that that there had been no material adverse change in Palm House, as defined in the PPM and loan documents, prior to each advance of investor funds although it was obligated to do so [*Id.* ¶¶ 36-37];

(vii)    PHH did not provide financial reports to investors despite it having the authority pursuant to the loan documents to access Palm House's financial statements and inspect its books and records [*Id.* ¶ 37-38]; and

(viii)    Palm House did not make monthly interest payments and Walsh improperly retained prepaid interest from investor funds [*Id.* ¶ 39].

Further, Walsh controlled bank accounts from which investor funds were misappropriated.  [*Id.* ¶ 27.]  PHH, SARC, USREDA, and Walsh received money in connection with these material misrepresentations and omissions of fact in the form of the investments and misappropriated funds. [*Id.* ¶¶ 11, 42.]

        **D.**    **Factual Allegations Supporting Entry of Default Judgment For Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act (Count V)**

Count V of the Complaint asserts violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b), against Walsh, PHH, and SARC.  [*Id.* at 15.]  The Commission respectfully refers the Court to Section II.C., *supra*, for a recitation of the facts, as alleged in the Complaint, supporting the Commission's default request for Count V.

**E.      Factual Allegations Supporting Entry of Default Judgment For Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act (Count VI)**

Count VI of the Complaint asserts violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(c) thereunder, 17 C.F.R. § 240.10b-5(c), against Walsh, PHH, and SARC.  [*Id.* at 15.]  The Commission respectfully refers the Court to Section II.C., *supra*, for a recitation of the facts, as alleged in the Complaint, supporting the Commission's default request for Count VI.

**F.      Factual Allegations Supporting Entry of Default Judgment For Violations of Section 17(a)(1) of the Securities Act (Count I)**

Count I of the Complaint asserts violations of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1), against Walsh, PHH, and SARC.  [*Id.* at 13.]  The Commission respectfully refers the Court to Section II.C., *supra*, for a recitation of the facts, as alleged in the Complaint, supporting the Commission's default request for Count I.

**G.      Factual Allegations Supporting Entry of Default Judgment For Violations of Section 17(a)(2) of the Securities Act (Count II)**

Count II of the Complaint asserts violations of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2), against Walsh, PHH, and SARC.  [*Id.* at 13.]  The Commission respectfully refers the Court to Section II.C., *supra*, for a recitation of the facts, as alleged in the Complaint, supporting the Commission's default request for Count II.  The Commission also submits that Walsh, PHH, SARC, and USREDA "obtain[ed] money or property by means of" the material misrepresentations and omissions of fact detailed in Section II.C.1., *supra*, in connection with the EB-5 offering of PHH limited partnership interests.  [*Id.* ¶¶ 3, 19, 42.]  The Commission further submits that because the Complaint alleges sufficient facts establishing Defendants' scienter under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and under Section 17(a)(1) of the

Securities Act, the Complaint necessarily satisfied the negligence requirement under Section 17(a)(2).

### H. Factual Allegations Supporting Entry of Default Judgment For Violations of Section 17(a)(3) of the Securities Act (Count III)

Count III of the Complaint asserts violations of Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3), against Walsh, PHH, and SARC.  [*Id.* at 14.]  The Commission respectfully refers the Court to Section II.C., *supra*, for a recitation of the facts, as alleged in the Complaint, supporting the Commission's default request for Count III.  The Commission also submits that because the Complaint alleges sufficient facts establishing Defendants' scienter under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and under Section 17(a)(1) of the Securities Act, the Complaint necessarily satisfied the negligence requirement under Section 17(a)(3).

### I. Equitable Relief Is Appropriate From Relief Defendant USREDA

A relief defendant, like USREDA, is a party not charged with wrongdoing who nevertheless "possesses illegally obtained profits but has no legitimate claim to them."  *SEC v. Huff*, 758 F. Supp. 2d 1288, 1362 (S.D. Fla. 2010), *aff'd on other grounds*, 455 F. App'x 882 (11th Cir. 2012).  It is not necessary for the person or entity holding the property to have done anything wrong in order for that person or entity to be required to return the property to its rightful owner. Indeed, "courts impose the remedy of constructive trust where, *rightfully or wrongfully*, a party has obtained property which unjustly enriches him." *U.S. v. Cannistraro*, 694 F. Supp. 62, 72 n.11 (D.N.J. 1988) (emphasis added), *modified*, 871 F.2d 1210 (3rd Cir. 1989).

Here, USREDA handled business activities and USCIS petition work for PHH and SARC's EB-5 securities offering.  [D.E. 1 ¶ 11.]  USREDA also received investor funds, which were fraudulently obtained by Walsh and his entities – PHH and SARC.  [*Id.* ¶¶ 11, 42].  Walsh – the architect of the fraud alleged in the Complaint – was USREDA's manager.  [*Id.* ¶¶ 8, 11.]

15

Consequently, USREDA has no legitimate claim to the proceeds of the scheme to defraud investors orchestrated by Walsh in which USREDA received $1,130,015 in investor deposits.  [D.E. 59-1 ¶ 6.]

## III.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its: (i) Motion for Entry of Default Judgment as to Defendant Walsh; and (ii) Motion for Entry of Default Judgment as to Defendants PHH and SARC and Relief Defendant USREDA and for other and further relief as set forth in those respective motions.  [D.E. 50, 59.]

Dated: December 6, 2019                         Respectfully submitted,

By:     *Jordan A. Cortez*
        Counsel
        Special Bar No. A5502524
        Direct Dial: (305) 982-6355
        E-mail: cortezjo@sec.gov

        **ATTORNEY FOR PLAINTIFF**
        **SECURITIES AND EXCHANGE COMMISSION**
        801 Brickell Avenue, Suite 1800
        Miami, Florida 33131
        Telephone: (305) 982-6300

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the document was served on the parties indicated on the service list below via methods indicated therein.

*Jordan A. Cortez*

## <u>**SERVICE LIST**</u>

<u>Via E-mail:  joedirect@gmail.com</u>
Joseph J. Walsh, Sr.

<u>Via U.S. Mail and Email</u>
Joseph J. Walsh, Sr., *Pro se*
c/o Henry Bennett Handler, Esq.
Weiss, Handler & Cornwell, P.A.
2255 Glades Road, Suite 218A
Boca Raton, FL 33431-7391
hbh@whcfla.com