UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-cv-81038-MIDDLEBROOKS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

PALM HOUSE HOTEL, LLLP, et al.,

    Defendants and Relief Defendants.
_____/



## ORDER ON MOTION FOR DEFAULT JUDGMENT

THIS CAUSE comes before the Court on Plaintiff Securities and Exchange Commission's Motion to Strike Defendant Joseph J. Walsh, Sr.'s Answer and Enter Default Judgment Against him pursuant to Fed. R. Civ. P. 37 and Motion for Entry of Default Judgment Against Defendants Palm House Hotel LLLP and South Atlantic Regional Center, LLC and Relief Defendant United States Regional Economic Development Authority LLC, filed on April 16, 2019 and October 11, 2019, respectively. (DE 50; DE 59). Defendants did not respond to either Motion. At the Court's request, Plaintiff filed a supplement to its Motion on December 6, 2019. (DE 72).

For the following reasons, the Motions are granted.

### BACKGROUND

In this securities litigation, Plaintiff contends that Defendant Walsh, Defendant Matthews, and the entities they controlled, violated several securities laws. (DE 1). Defendants allegedly committed these violations in furtherance of a scheme where Defendants defrauded several foreign investors in connection with an Immigrant Investor Program (the "EB-5 Program"), a program administered by the United States Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶¶ 2-3, 19).

The EB-5 Program, which was created by Congress in 1990, provides prospective immigrants with the opportunity to become permanent United States residents by investing in the United States. (*Id.* at 5 ¶ 15). A foreign applicant qualifies for a visa, through the EB-5 Program, by investing $500,000 or $1,000,000 (depending on the type of investment) in a commercial enterprise approved by the United States Citizenship and Immigration Service ("Immigration Service"). (*Id.* at 5-6 ¶ 16). After making this investment, the applicant may apply for a conditional green card and this green card is valid for two years. (*Id.*). If the applicant's investment creates or preserves ten jobs during that two-year conditional period, then the applicant may apply to have the conditions removed from his or her green card. (*Id.*). If successful, the applicant would be able to live and work in the United States permanently. (*Id.*).

According to the Complaint, through an EB-5 offering of Palm House Hotel, LLP ("Palm House Hotel") limited partnership interests, Defendant Palm House Hotel raised $43,991,458 from at least 88 foreign investors from November 2012 until March 2015. (*Id.* at 6 ¶ 19). The offering materials provided to those investors indicated that the funds would be used to acquire, develop and operate a hotel (the "Project"). (*Id.*). Defendant Walsh was involved with the creation and dissemination of those materials; Walsh also solicited investors through sales agents. (*Id.*). Contrary to Defendant's representations, the funds obtained from investors were not utilized in furtherance of the Project. (*Id.* at 7 ¶ 27). Instead, Walsh and other Defendants misappropriated substantial amounts of investor funds. (*Id.*).

On August 3, 2018, Plaintiff filed its Complaint against Defendants Palm House Hotel ("PHH"), South Atlantic Regional Center, LLC ("SARC"), Joseph Walsh, Sr., Robert V. Matthews, 160 Royal Palm, LLC, and United States Regional Economic Development Authority LLC. (DE 1). In the Complaint, Plaintiff alleges that Defendant Walsh has violated: 1) Section

17(a)(1) of the Securities Act (Count I); 2) Section 17(a)(2) of the Securities Act (Count II); 3) Section 17(a)(3) of the Securities Act (Count III); 4) Section 10(b) and Rule 10b-5(a) of the Exchange Act (Count IV); 5) Section 10(b) and Rule 10b-5(b) of the Exchange Act (Count V); and 6) Section 10(b) and Rule 10b-5(c) (Count VI). (*Id.*).

On October 31, 2018, after unsuccessfully attempting to serve Defendant Walsh multiple times, Plaintiff moved for the Court to approve alternative service on Walsh. (DE 34). I granted the Motion and Plaintiff subsequently filed a summons returned executed as to Defendant Walsh. (DE 36; DE 38).

On November 11, 2018, Defendant Walsh moved for a ninety-day extension to respond to the Complaint. (DE 39). I granted the motion in part and directed Walsh to file his response by December 14, 2019. (DE 41). On that deadline, Defendant Walsh filed his Answer (through his attorney Glen J. Criscione). (DE 44).

On December 26, 2018, Defendant Walsh moved to modify the trial date. (DE 45). Before I ruled on that Motion, Attorney Criscione moved to withdraw from this lawsuit. (DE 46). In making that request, Attorney Criscione stated that he attempted to communicate with Defendant Walsh regarding terms of representation, but Walsh never answered the emails. (*Id.* at 2 ¶ 4). I granted the Motion to modify the trial date and reset the trial for December of 2019. (DE 47). I also granted Attorney Criscione's motion to withdraw and instructed Defendant Walsh to obtain replacement counsel or enter a *pro se* notice of appearance by February 4, 2019. (DE 48).

Defendant Walsh did not take either of those actions. In fact, Defendant Walsh has not filed anything in this litigation since December 26, 2018 (when he moved to modify the trial date). This means that to date Walsh has not submitted his required initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(D). That is the case even though Plaintiff has attempted to contact Walsh about his

failure to submit the initial disclosures, and Walsh failed to respond to Plaintiff. (*See* DE 50 at 6; DE 50-1). Plaintiff also sent Defendant Walsh a first set of interrogatories on February 7, 2019. (*Id.*). Walsh has not responded to those interrogatories and the deadline to do so was months ago.

On March 19, 2019, Plaintiff again attempted to communicate with Walsh via email. (DE 50-3). In the March 19 email, Plaintiff reiterated that Defendant Walsh has failed to comply with several court orders and that Walsh has failed to participate in this litigation in any manner. (*Id.*). Plaintiff asked Defendant Walsh to respond to the email by March 22, 2019, but Walsh did not respond.[1] (*Id.*).

Walsh's consistent attempts to evade his obligation of defending this lawsuit lead Plaintiff to file the present Motion. (DE 50). In the Motion for Default Judgment Against Defendant Walsh, Plaintiff requested that I strike Walsh's Answer as a sanction pursuant to Federal Rule of Civil Procedure 37. Plaintiff then requested that default judgment be entered against Walsh.

On November 21, 2019, I granted this Motion in part. (DE 68). Specifically, I granted the Motion to the extent it requested that I strike Defendant Walsh's answer. (*Id.*). However, I otherwise took the Motion under advisement. I did this because the default judgment request was presented in one single argument and did not separately state the counts against Walsh and the reasons why default was appropriate for each count. I also required Plaintiff to file a similar supplement for the Motion for Default Judgment as to the other Defendants. (DE 59; DE 69).

---

[1] The only evidence of Walsh's participation in this litigation (since December 26, 2018) is a letter Walsh apparently sent to the Court on February 14, 2019. (DE 50-2). The letter is attached to Plaintiff's Motion; however, it was not separately filed on the docket. In the letter, Walsh requested an extension of time to obtain representation in this matter. (*Id.*). However, Walsh did not provide reasoning that would justify granting that relief. Additionally, Walsh has not responded to the present Motion, filed in April 2019, or participated in this litigation in any manner since sending this letter. I therefore find that the existence of the letter does not alter the present analysis.

4

On December 6, 2019, Plaintiff filed the required supplement. (DE 72). The supplemented motion separately states a default request for each count against all Defendants.

## ANALYSIS

### I. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). A "default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370, n.41 (11th Cir. 1997).

If the complaint states a claim, the court must then determine the amount of damages and, if necessary, "may conduct hearings . . . to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2). However, where the amount of damages requested is "a liquidated sum or one capable of mathematical calculation," no hearing is needed. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### II. COUNTS IV-VI

In Counts IV, V, and VI of the Complaint, Plaintiff alleges that Defendants PHH, SARC, and Walsh violated Section 10(b), Rule 10b-5(a), Rule 10b-5(b), and Rule 10b-5(c) of the Securities Act. (DE 1 at 14-15 ¶¶ 52-60). "To prove a 10(b) violation, the SEC must show (1) material misrepresentations or materially misleading omissions, (2) in connection with the

5

purchase or sale of securities, (3) made with scienter." *S.E.C. v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007).

### A. Material Misrepresentation or Materially Misleading Omissions

"The test for materiality in the securities fraud context is 'whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action.'" *Merchant Capital*, 438 F.3d at 767 (quoting *SEC v. Carriba Air*, 681 F.2d 1318, 1323 (11th Cir.1982)); *see also TSC Indus, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.").

In the Complaint Plaintiff alleges that Defendants Walsh, PHH, and SARC made several material misrepresentations, including misrepresentations made in offering materials regarding:

- How the funds raised would be spent (DE 1 at 8 ¶ 27)
- The use of an escrow fund, held in an account at PNC bank, to hold investors funds (*Id.* at 9 ¶ 30)
- The return of investor funds if the applicable investor's immigration application was denied (*Id.* at 9 ¶ 31)
- Defendant Walsh's background (*Id.* at 10 ¶ 33)
- The advancement of investor's funds loaned to Palm House and the process for such advancement (*Id.* at 11 ¶¶ 36-37)
- The periodic disclosure of financial information regarding the underlying progress of the building of the hotel and Palm House's repayment of loan to PHH (*Id.* at 12 ¶¶ 38-40)

According to Plaintiff, these misrepresentations taken together influenced the investors decision to invest. (*See generally* DE 1). Because these misrepresentations would likewise influence a reasonable investor's decision to invest, I conclude that Plaintiff has established the material misrepresentation prong of the Section 10(b) and Rule 10b-5 analysis.

### B. In Connection with the Purchase or Sale of Securities

The Eleventh Circuit "read[s] the terms 'in connection with the purchase or sale of' and 'in the offer or sale of' broadly." *SEC v. Radius Capital Corp.*, 653 F. App'x 744, 750 (11th Cir. 2016).

6

"And we have explained that the 'in connection with' requirement is satisfied where the fraud 'touch[es]' the transaction in some way, including situations where 'the purchase or sale of a security and the [preceding] proscribed conduct are part of the same fraudulent scheme.'" *Id.* (quoting *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1046 (11th Cir. 1986)).

According to Plaintiff's Complaint, the material misrepresentations here were made through Defendants' offering materials and reviewing those materials impacted investors' decisions to invest. (*See, e.g.*, DE 1 at 1 ¶ 3, 6 ¶ 19, 7 ¶¶ 21-22, 9-10 ¶ 31). Acting as an agent of Defendant PHH, Defendant Walsh communicated these offering materials via email, which is a method of interstate commerce. (*Id.* at 6 ¶ 19, 7 ¶¶ 21-22, 9-10 ¶ 31).

### C. Made with Scienter

"[T]he term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S 185, 193 n.12 (1976). "Scienter may [also] be established by a showing of knowing misconduct or severe recklessness." *Carriba Air*, 756 F.3d at 1324. "Proof of recklessness [] require[s] a showing that the defendant's conduct was an extreme departure of the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *SEC v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014) (quoting *Carriba Air*, 756 F.3d at 1324).

According to the Complaint, Defendants made the several misrepresentations discussed above with the intent to "deceive, manipulate, or defraud" the investors into makings investments. (*See generally* DE 1). At the very least, Plaintiff contends that Defendants' conduct was severely reckless. (DE 72 at 12-13). These allegations sufficiently state that Defendants acted with the required scienter.

In sum, Plaintiff's Complaint sufficiently states that Defendants violated Section 10(b), Rule 10b-5(a), Rule 10b-5(b), and Rule 10b-5(c) of the Securities Act. In the absence of any competing argument from Defendants, I find entry of final default judgment against Defendants to be proper with respect to Counts IV-VI of Plaintiff's Complaint.

### III. Counts I-III

In Counts I, II, and III of the Complaint, Plaintiff alleges that Defendants PHH, SARC, and Walsh violated Section 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act. (DE 1 at 13-14 ¶¶ 43-51). "To show a violation of section 17(a)(1), the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." *Id.* "[T]o show that the defendants violated section 17(a)(2) or 17(a)(3), the SEC need only show (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence." *Id.*

Based upon the allegations described in the preceding analysis, the Complaint sufficiently states claims against Defendants for violations of Section 17(a)(1-3) of the Securities Act. In the absence of any competing argument from Defendants, I find entry of final default judgment against Defendants to be proper with respect to Counts I-III of Plaintiff's Complaint.

### IV. Equitable Relief Against Relief Defendant USREDA

"Equitable relief from a relief defendant (sometimes referred to as a nominal party) against whom no wrongdoing is alleged may be appropriate where the SEC establishes that the nonparty possesses illegally obtained profits but has no legitimate claim to them." *SEC v. Huff*, 758 F. Supp. 1288, 1361 (S.D. Fla. 2010) (citing *SEC v. Cherif*, 933 F.2d 403, 414 n. 11 (7th Cir.1991)). According to the Complaint, USREDA is in possession of funds that were fraudulently obtained by Defendants. (DE 1 at 5 ¶ 11, 12-13 ¶ 42). USREDA was also involved in activities related to

8

the USCIS petition work for PHH and SARC's EB-5 offering. (*Id.* at 5 ¶ 11). Based upon the Complaint's allegations and in the absence of any competing arguments by Relief Defendant USREDA, Plaintiff is entitled to the requested equitable relief against USREDA. Judgment shall be subsequently entered requiring USREDA to remit the funds received in connection with this fraudulent scheme.

## V.   Injunctive Relief

Plaintiff requests injunctive relief preventing Defendants Walsh, PHH, and SARC from further violating the Securities Act. (DE 50 at 17-18; DE 59 at 11-12). "The SEC is entitled to injunctive relief when it establishes (1) a *prima facie* case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). According to the Eleventh Circuit:

> Indicia that a wrong will be repeated include the "egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."

*Id.* (quoting *Carriba Air*, 681 F.2d at 1322).

In this Order, I have already established that Plaintiff is entitled to default judgment against Defendants for violating several portions of the Securities Act. As a result, Plaintiff has satisfied the first requirement necessary to obtain injunctive relief against Defendants.

As for the second criteria, I conclude that the Complaint's allegations sufficiently establish the required "reasonable likelihood that the wrong will be repeated." First, and significantly, Defendants perpetrated an egregious fraud. Defendant obtained millions of dollars from investors by making several materially false statements and omissions. Second, this fraudulent scheme was not an isolated incident but instead spanned over a several year period. Third, the degree of

9

scienter was substantial in this case, as the fraudulent representations were intentionally made to manipulate, deceive, and defraud the investors into making an investment.

Accordingly, I conclude that Plaintiff is entitled to the requested injunction against Defendants Walsh, PHH, and SARC. Final Judgment reflecting the entry of the injunction will be entered by separate order.

## VI. Disgorgement, Prejudgment Interest, and Civil Penalty

Finally, Plaintiff seeks disgorgement, prejudgment interest, and the assessment of a civil penalty as to Defendants Walsh, PHH, and SARC. (DE 50 at 19-21; DE 59 at 12-14). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) (citing *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 102 (2d Cir. 1978)). Thus, a trial court acts within its "equitable powers" when it orders disgorgement of funds obtained through fraud. *Id.* "The SEC's burden for showing the amount of assets subject to disgorgement (and, therefore available for freeze) is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required]. . . . Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Calvo*, 378 F.3d at 1217). Moreover, a trial court may impose prejudgment interest on the disgorgement amount. *SEC v. Merchant Capital, LLC*, 486 F. App'x 93 (11th Cir. 2012). Finally, the imposition of a monetary penalty is permitted under 15 U.S.C. § 77t(d) and § 78u (d)(3).

Under these authorities, Plaintiff is entitled to the requested disgorgement, prejudgment interest, and civil penalty. Final Judgment reflecting the entitlement to such award will be entered separately. Upon entry of the final judgment(s), the court will close this case; however, it will retain jurisdiction to consider the forthcoming motion specifying the amount of disgorgement,

prejudgment interest, and a civil penalty. Any motion seeking such relief will be due within 20 days of the entry of the order closing this case.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Default Judgment against Defendant Walsh (DE 50) is **GRANTED.**

2. Plaintiff's Motion for Default Judgment against Defendants PHH, SARC, and Relief Defendant USREDA (DE 59) is **GRANTED.**

3. Plaintiff's Supplemental Motion for Entry of Default Judgment against all remaining Defendants (DE 72) is **GRANTED.**

4. Final Default Judgments against these Defendants and Relief Defendant will be entered by separate orders.

5. Within **twenty days** of the closing of this case, Plaintiff **SHALL MOVE** (if it so desires) for disgorgement, prejudgment interest, and a civil penalty.

**SIGNED** in Chambers at West Palm Beach, Florida, this 19 day of December, 2019.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record;
Joseph J. Walsh, Sr.
9250 Belvedere Road
Suite 101
Royal Palm Beach, FL 33411
PRO SE;
Palm House Hotel, LLLP
9250 Belvedere Road
Suite 101

11

Royal Palm Beach, FL 33411
PRO SE;
South Atlantic Regional Center, LLC
9250 Belvedere Road
Suite 101
Royal Palm Beach, FL 33411
PRO SE;
United States Regional Economic Development Authority LLC
9250 Belvedere Road
Suite 101
Royal Palm Beach, FL 33411
PRO SE